UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LAWRENCE CHARLES SIMON | * | CIVIL ACTION |
| VERSUS | * | NO. 22-3101 |
| KILOLO KIJAKAZI, ACTING | * | SECTION "M" (2) |
| COMMISSIONER OF SOCIAL | | |
| SECURITY ADMINISTRATION | * | |

### ORDER AND REASONS

Pursuant to § 405(g) of the Social Security Act ("the Act"), Plaintiff Lawrence Charles Simon seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Titles II and Part A of Title XVIII of the Act and supplemental social security ("SSI") under Title XVI of the Act.[1]  The parties consented to the jurisdiction of the undersigned United States Magistrate Judge in accordance with 28 U.S.C. 636(c) for determination.  ECF No. 17.

In accordance with the Scheduling Order, the parties moved for summary judgment and/or filed briefs in support of their positions on this § 405(g) matter.  ECF Nos. 13-16.  Having considered the record, the arguments of counsel, and the applicable law, Plaintiff's motion is DENIED and the Commissioner's decision is AFFIRMED for the reasons stated herein.

I.   **PROCEDURAL HISTORY**

Plaintiff  Lawrence Charles Simon is a now 56-year-old man who filed an application for DIB on December 29, 2019 and SSI on February 7, 2020, alleging disability beginning December 1, 2019 in both applications.  ECF No. 11 at 222, 226.  His relevant work history includes employment as a heavy truck driver, light truck driver, shipping and receiving clerk, and a furniture

---

[1] 42 U.S.C. §§ 405(g).

mover.  *Id*. at 260-68; *see also id*. at 23-24.  His age classification is "closely approaching advanced age."  20 C.F.R. §§ 404.1563(d).  He alleges disability due to hypertension and hallucinations.  *Id*. at 250.

Simon applied for DIB on December 30, 2019 and SSI on February 7, 2020.  ECF No. 11 at 222, 226.  His applications were denied at the agency level on August 12, 2020.  ECF No. 11 at 66, 68, 141.  Plaintiff requested reconsideration on August 21, 2020 (ECF No. 11 at 148), and the claim was again denied on November 19, 2020.  ECF No. 11 at 150.  Simon filed a request for a hearing before an Administrative Law Judge ("ALJ") (ECF No. 11 at 154), and the matter was heard on August 10, 2021 before ALJ Karen Wiedemann.  ECF No. 11 at 32-65.  Simon appeared and testified at the hearing and was represented by counsel, Dorothy Smith.  *Id*. at  32.  Thomas Mungall, an impartial vocational expert ("VE"), also appeared and testified at the hearing.  *Id*.

On August 21, 2021, Plaintiff's non-attorney representative Andrew S. Youngman submitted an Intent to Submit Post-Hearing Memorandum to ALJ Wiedemann, requesting two weeks to submit rebuttal evidence.  ECF No. 11 at 325.  Thereafter, on September 9, 2021, Plaintiff's representatives filed a Post-Hearing Memorandum and Objections to the Vocational Witness' Testimony, arguing that Mungall was not qualified to testify about DOT job incidence data and  his testimony was unreliable and not supported by substantial evidence.  *Id*. at 326-49.  That same day, Plaintiff's representative submitted a vocational consultative evaluation performed by Karen Starr, MS, CRC, EDPNA, a vocational rehabilitation consultant.  *Id* at 350-55.

On October 19, 2021, ALJ Wiedemann issued a decision denying Simon's applications for DIB and SSI.  ECF No. 11 at 13-30.  The ALJ admitted Simon's post-hearing correspondence but declined to admit any objective evidence included therein.  *Id*. at 16. ALJ Wiedemann also overruled any objections to the VE testimony by Thomas Mungall, noting that he is qualified by

the Agency to testify, and that Simon's attorney had an opportunity to cross examine the VE and raise objections at the time of the hearing. *Id*.

On December 6, 2021, Simon submitted a Request for Review by the Appeals Council along with supporting "Legal Contentions." *Id*. at 219, 356. After granting Simon additional time and permission to submit further information in support of his case (ECF No. 11 at 11), the Council ultimately denied the Request for Review on July 11, 2022. *Id*. at 5. The ALJ's decision thus became the final decision of the Commissioner for the purpose of this Court's review. *Id*. Simon filed this action on September 1, 2022. ECF No. 1. In accordance with this Court's Scheduling Order, Simon filed a motion for summary judgement on January 18, 2023, and the Commissioner filed a cross-motion for summary judgment on February 15, 2023. ECF Nos. 14, 15. Simon filed a reply memorandum on March 1, 2023. ECF No. 16.

## II.   <u>STATEMENT OF ISSUES ON APPEAL</u>

Simon identifies one issue for appeal:  The ALJ's RFC determination was not supported by substantial evidence because she failed to properly evaluate the opinion of Carlos Kronberger, PhD.

## III.   <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since December 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.)

3. The claimant has the following severe impairments: major depressive disorder and synthetic cannabis induced psychosis (20 CFR 404.1420(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but the following nonexertional limitations: The claimant can perform simple and some detailed work, but no complex tasks.  The claimant can relate to others on a superficial work basis in jobs that do not require public interaction.  The claimant can adapt to a work situation.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February 6, 1967 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date  (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416,920(g)).

## IV.   **ANALYSIS**

### A.  **Standard of Review**

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[2]  Substantial evidence is such relevant

---

[2] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhar*t, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).

evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[3]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[4]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the court does not try any issues *de novo*.[5]  This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[6]

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[7]  The court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[8]

To be considered disabled and eligible for benefits,[9] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[10]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable

---

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[4] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[5] *Halterman ex rel Halterman v. Colvin*, 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[6] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[7] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[8] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).
[9] The relevant law and regulations governing claims for DIB and SSI are identical.  *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[10] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

clinical and laboratory diagnostic techniques."[11]  To qualify as a disability, the impairment must be expected to result in death or have lasted or can be expected to last for a continuous period of not less than twelve months.[12]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[13]  Thus, to be considered disabled and eligible for benefits, the Claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[14]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[15]  "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[16]  The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is

---

[11] 42 U.S.C. § 423(d)(3).
[12] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).
[13] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).
[14] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[15] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.
[16] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

capable of performing.[17]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[18]

### B.  Factual Background

Plaintiff testified that he worked in various positions, including as a delivery driver, chain installer, and furniture mover.  ECF No. 11 at 38-40. Plaintiff stopped working in December of 2019 when he lost his job after an altercation with a customer, after which he began to experience paranoia and felt as though people were following him.  *Id.* at 40.  Before that incident, Plaintiff testified that he did not have any mental health problems.  *Id.* at 41.  Upon questioning by his counsel, Plaintiff indicated that he had a history of using synthetic marijuana, but had stopped a month before he left his last job.  *Id.*  He also testified that he used non-synthetic marijuana roughly a month before the hearing, but had not used synthetic marijuana since he left the hospital in December of 2018. *Id.* at 42.  Despite the fact that he was no longer using drugs, Plaintiff reported paranoia, hearing voices, trouble concentrating and difficulty interacting with other people.  *Id.* at 42-43.  He hears voices every day that tell him to take harmful action against himself and others and that people are out to get him.  *Id.* at 44-45.  Plaintiff also experiences depression and anxiety. *Id.* at 49.

Plaintiff spends a typical day "in a closed room with me around myself" while his wife is at work. *Id.* at 45-46.  He indicated difficulty interacting with his wife sometimes because of his forgetfulness and preference to be alone.  *Id.* at 46.  For example, Plaintiff forgets to take out the trash and pay bills.  *Id.*  Plaintiff testified that his wife takes care of most household activities, including their finances.  *Id.* at 46-47.

---

[17] *Id.* at 448.
[18] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

After Plaintiff left his job in December of 2019, he went to JeffCare for a mental health evaluation and prescription medication, which helped him for two months before he began experiencing hallucinations again. *Id* at 47-48. The voices and hallucinations cause him to have "off-days" two to three times per week. *Id*. While Plaintiff can drive his wife to the grocery store, he stays in the car because he cannot be around people. *Id*. at 49. His mother visits him every week, although he rarely spends time with other family members or friends. *Id*. at 50. Because of COVID-19 restrictions, Plaintiff had not been to an in-person doctor's appointment since June of 2020, but has completed a few telephone appointments. *Id*.

**C.  <u>Vocational Expert Testimony</u>**

Vocational expert Thomas Mungall, M.Ed., LRC testified at the hearing. Plaintiff's counsel raised no objection to Mr. Mungall's qualifications either before or during the hearing. ECF No. 11 at 57.

Mungall classified Plaintiff's work as a heavy truck driver as DOT reference 905.663-024, strength level heavy, SVP of 4; his work as a light truck driver as DOT reference 906.683-022, strength level medium, SVP of 3; his work as a shipping and receiving clerk as DOT 222.387-050, strength level medium, SVP of 5; and his work as a furniture mover as DOT reference 905.687-014, strength level heavy, SVP of 3. *Id*. at 60-61. In exploring available work in the national economy, the ALJ posed a hypothetical based on an individual of the same age, education, and work experience who has no exertional limitations but can only perform simple and some detailed work, but no complex tasks, can relate to others on a superficial work basis in jobs that do not require public interaction, and can adapt to a work situation. *Id*. at 61-62. Mungall responded that such an individual could not perform any of Plaintiff's past work, but identified other jobs that could accommodate those limitations, including 237,448 housekeeping/cleaner jobs (light, SVP:

2); 554,402 positions of kitchen helpers (medium, SVP: 2); 18,032 positions of industrial cleaners (medium, SVP: 2); and 25,524 positions of photocopying machine operator (light, SVP: 2). *Id*. at 62.

Altering the hypothetical, the ALJ asked whether there would be work available if an individual such as the claimant would have difficulty maintaining concentration, persistence and pace on the job, such that he would be off-task up to 15% of the time. Mungall indicated that employers start to notice such issues when an employee is off-task ten percent of the time, which may result in the employee being placed on some sort of progressive disciplinary procedures. *Id*. at 63. If the focus issues did not improve, Mungall testified, the employee would usually be terminated at some point. *Id*.

Plaintiff's counsel cross-examined Mungall, and asked if a once-a-month absence from work would be allowed long-term at the unskilled jobs identified. *Id*. The VE responded that once-a-month would likely be tolerated, but two or more times a month would be problematic. *Id*. Counsel also asked if it would be a problem for a worker to take extra fifteen minute beaks every shift, during which time he would leave his workstation, and Mungall responded affirmatively. *Id*. at 63-64.

### D.  Medical Evidence

I have reviewed the medical records and the ALJ's summary of the medical evidence. ECF No. 11 at 359-470. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference.

### E.  Plaintiff's Appeal

At step 1, the ALJ determined that Simon meets the insured status requirements through December 31, 2024 and that he has not engaged in substantial gainful activity since December 1,

2029.[19]  At step 2, the ALJ found severe impairments of major depressive disorder and synthetic cannabis induced psychosis (20 C.F.R. 404.1520(c) and 416.920(c)) that significantly limit the ability to perform basic work activities.[20]

The severity of "mental disorders" is measured using medical criteria ("paragraph A"), functional criteria ("paragraph B"), and an analysis of "serious and persistent mental disorders" ("paragraph C").[21]   Listing 12.04 (Depressive, bipolar and related disorders) requires that Plaintiff's impairment satisfy the criteria of paragraphs A **and** either B or C.  Section 12.04(A) (depressive disorder) requires, in pertinent part:

> A.  Medical documentation of the requirements of paragraph 1 or 2:
>   1.  Depressive disorder, characterized by five or more of the following:
>       a.  Depressed mood;
>       b.  Diminished interest in almost all activities;
>       c.  Appetite disturbance with change in weight;
>       d.  Sleep disturbance;
>       e.  Observable psychomotor agitation or retardation;
>       f.  Decreased energy;
>       g.  Feelings of guilt or worthlessness;
>       h.  Difficulty concentrating or thinking; or
>       i.  Thoughts of death or suicide.
>   2.  Bipolar disorder . . . .

Listing 12.04 requires that the claimant satisfy paragraph A and either paragraph B or C.

Paragraphs B and C provides:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>   1. Understand, remember, or apply information.
>   2. Interact with others.
>   3. Concentrate, persist, or maintain pace.
>   4. Adapt or manage oneself.
>
>   OR

---

[19] ECF No. 11 at 19.
[20] *Id.*
[21] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(a)–(c).

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04 (internal citations omitted).

Based on the medical and non-medical evidence, the individual's limitation in each area is rated on a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; and (5) extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(2), (3)(a) ("Clinicians may use these terms to characterize your medical condition. However, these terms will not always be the same as the degree of your limitation in a paragraph B area of mental functioning."). Moderate limitation means that the individual's functioning in the area is fair. *Id.* 12.00F(2)(c). For marked, the individual must be seriously limited, and, for extreme, the individual must be unable to function in the area at all. *Id.* 12.00F(2)(d) –(e).

Limitation of an area of mental functioning reflects the overall degree to which [the individual's] mental disorder interferes with that area. The degree of limitation is how [the SSA] document[s] [its] assessment of [the individual's] limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis. It does not necessarily reflect a specific type or number of activities, including activities of daily living, that [the individual has] difficulty doing. In addition, no single piece of information . . . can establish the degree of limitation of an area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(3)(d).

To show medical equivalence, Plaintiff's condition must be "at least equal in severity and duration to the criteria of [the Listing]." 20 C.F.R. § 404.1526(a). When the individual does not exhibit one or more of the required findings or one or more of the findings does not meet the required severity, the individual's impairment is medically equivalent to the Listing only if other

findings related to that impairment are "at least of equal medical significance to the required criteria."  20 C.F.R. § 404.1526(b)(1)(ii).  At the hearing decision level, the ALJ is responsible for deciding whether an impairment is medically equivalent to a Listing.  20 C.F.R. § 404.1526(e)(3).

At step 3, the ALJ found that, considering all of Plaintiff's medically determinable impairments, he did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment.[22]  In so finding, the ALJ performed the Paragraph B analysis, determining that Plaintiff has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself.[23]

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels as defined in 20 C.F.R. §§ 404.1467 and 416.967 with certain specified additional limitations.[24]  At step 4, ALJ Wiedemann determined that Plaintiff is unable to perform past relevant wok as a heavy truck driver (DOT 905.663-024), light truck driver (DOT 906.683-022), shipping and receiving clerk (DOT 222.387-050), or furniture mover (DOT 905.687-014), as these roles require performance of work-related activities  precluded by his RFC.[25]  At step 5, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff could perform other work available in significant numbers in the national economy, hence he has not been under a disability since the alleged onset date.[26]

---

[22] *Id*. at 19-20.
[23] *Id*.
[24] *Id*. at 20-23.
[25] *Id*. at 23-24.
[26] *Id*. at 24-25.

Plaintiff objects to the ALJ's RFC determination, arguing that it was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of consultative examining psychologist Carlos Kronberger, PhD.[27]   Specifically, Plaintiff asserts that the ALJ discounted credible, persuasive evidence from Dr. Kronberger indicating that Plaintiff has marked difficulty with social interaction and "moderate to severe" difficulty with concentration, persistence, and pace.   Instead, Plaintiff avers, the ALJ erroneously blamed Plaintiff's prior use of synthetic cannabis for his "longstanding mental limitation," which constituted a mischaracterization of evidence warranting remand.[28]   To support her decision, Plaintiff claims that ALJ Wiedemann "cherry-picked evidence from the record to indicate Plaintiff's' drug use contributed to his mental impairments" and failed to recognize the subjective nature of mental illness.[29]   Plaintiff also claims that, contrary to the ALJ's conclusion, Dr. Kronberger's opinion was consistent with the other objective and subjective evidence in the record.[30]   Finally, Plaintiff argues that the ALJ's errors were not harmless because,  "had the ALJ properly evaluated Dr. Kronberger's opinion, he [sic] would have found Plaintiff disabled under the SSR 85-15 framework. . . [which] states that a substantial loss of ability to meet an of the basic mental demands of competitive, remunerative, unskilled work would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."[31]

In her cross-motion, the Commissioner argues that the ALJ considered all relevant opinion evidence in the record in crafting the Plaintiff's RFC and included only limitations that were

---

[27] ECF No. 14-1 at 2.
[28] *Id*. at 5.
[29] *Id*. at 5-6.
[30] *Id*. at 6.
[31] *Id*. at 7-8.

supported by the record evidence as a whole, hence substantial evidence supports the ALJ's decision.[32]   Defendant further asserts that the ALJ properly assessed the medical opinion evidence under the revised regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, which regulations instruct adjudicators to evaluate medical opinions for persuasiveness, articulating their consideration of the two most important factors: sustainability and consistency.[33]   In doing so, Defendant notes, the ALJ found that Dr. Kronberger's opinion was not fully consistent with the record as a whole, which included relatively normal mental status examination findings, including denials by Plaintiff of having major mood disturbances, psychosis, or hallucinations.[34]   Finally, Defendant argues that Dr. Kronberger's opinion, which included conclusions that Plaintiff had marked difficulties in social interaction and moderate difficulty with concentration, persistence, and pace, could not serve as evidence that Plaintiff's condition meets Listing 12.04 both because the ALJ found the medical opinion unpersuasive and because Plaintiff failed to cite to any objective medical findings indicating that his condition satisfied all requirements of Listing 12.04.[35]   As the evidence does not establish that Plaintiff has at least "marked" limitations in two areas, or "extreme" limitations in one area, the Commissioner asserts that the ALJ properly found that Plaintiff did not meet or equal Listing 12.044, and the record does not corroborate Plaintiff's allegations of disabling limitations.[36]

In Reply, Plaintiff reiterates his arguments and contends that Defendant's Opposition contained improper post-hoc rationalizations of evidence to explain the Commissioner's erroneous treatment of the evidence.  ECF No. 16.

---

[32] ECF No. 15 at 4.
[33] *Id*.
[34] *Id*. at 7-8.
[35] *Id*. at 8-9.
[36] *Id*. at 9.

1. <u>**Consideration of Medical Opinions and Prior Medical Findings in the Residual Functional Capacity Determination**</u>

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ discounted or improperly considered the opinion of Dr. Kronberger.[37] Plaintiff asserts that the ALJ thus violated 20 C.F.R. § 404.1520c when she crafted his RFC.

a. **20 C.F.R. § 404.1520c**

Initially, as Plaintiff filed his claims after March 27, 2017,[38] 20 C.F.R. § 404.1520c governs.[39]  This regulation provides that "ALJs are no longer required to give controlling weight to a treating physician's opinion."[40]  Instead, the ALJ must consider a set of factors in determining "what weight, if any, to give a medical opinion."[41]  Supportability and consistency are the "most important factors" considered when determining the persuasiveness of a medical source's opinions or prior administrative medical findings.[42]

The supportability factor hinges on relevance; "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the [opinion or finding] will be."[43]  Similarly, when assessing consistency, which is the other "most important" factor, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the [opinion or finding] will be."[44]

---

[37] ECF No. 14-1 at 1.
[38] ECF No. 11 at 222, 226.
[39] *Webster*, 19 F.4th at 719 (citing 20 C.F.R. § 404.1520c).
[40] *Id.*; *see also Winston v. Berryhill*, 755 F. App'x. 395, 402 n.4 (5th Cir. 2018) (noting that the SSA has "changed its regulations so that ALJs are no longer required to assign each medical opinion a weight").
[41] *Webster*, 19 F.4th at 719 (citing  20 C.F.R. § 404.1520c).
[42] 20 C.F.R. § 404.1520c; *see also Stuckey v. Comm'r of Soc. Sec.*, No. 21-200, 2022 WL 4534963 at *1 (M.D. La. Sept. 28, 2022).
[43] 20 C.F.R. § 404.1520c(c)(1).
[44] 20 C.F.R. § 404.1520c(c)(2).

Other factors in the persuasiveness analysis include relationship with the claimant (length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and nature of examining relationship) and specialization.[45]   The "examining relationship" subfactor, instead of directing ALJs to give "more weight" to the medical opinion of an examining source than to that of a non-examiner, now advises that a medical source "*may* have a better understanding" of a claimant's impairments if that provider examines the claimant than if the medical source "only reviews evidence in [the claimant's] folder."[46]   This multi-factor analysis "enables courts to focus on 'the content of the evidence [rather] than on the source.'"[47]

### b.  SSR 85-15

Plaintiff also argues that, had the ALJ properly evaluated Dr. Kronberger's opinion, she would have found Plaintiff disabled under the SSR 85-15 framework.[48]

Social Security Regulation ("SSR") 85-15 provides ALJs guidance on determining the work capabilities of a claimant with solely nonexertional impairments.  It provides:  "Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work."[49]   Unskilled jobs "ordinarily require working primarily with objects, rather than data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet . . . the basic mental demands of competitive, remunerative, unskilled work [including] the abilities . . . to understand, carry out, and remember

---

[45] *Id*. at 20 C.F.R. § 404.1520c.
[46] *Id*. at 20 C.F.R. § 404.1520c(c)(1).
[47] *Webster,* 19 F.4th at 719 (quoting 82 Fed. Reg. 5853 (Jan. 18, 2017)).
[48] ECF No. 14-1 at 7.
[49] SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).

simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."[50]

### c. ALJ Wiedemann's Consideration of Medical Opinions Centers Supportability and Consistency in Accordance with 20 C.F.R. § 404.1520c

Again, this Court's role is not to "reweigh the evidence, try the issues de novo, or substitute [its] judgment for that of the [Commissioner]."[51]  Rather, the Court is tasked with determining whether substantial evidence supports the ALJ's decision and whether she applied the correct legal standard.[52]  It is the *ALJ's* responsibility to determine an applicant's limitations and their application to the RFC.[53]  The fact that the Court might have reached a different conclusion is of no moment provided there is substantial evidence to support the ALJ's determination.[54]

Plaintiff's assertion that the ALJ's RFC determination lacks substantial evidence merely because she found Dr. Kronberger's opinion unpersuasive lacks merit. ALJ Wiedemann appropriately considered all medical opinions and evidence in the record, including Dr. Kronberger's evaluation, in crafting Plaintiff's RFC.

The administrative record contains three sources of medical evidence: (1) Plaintiff's hospital records from his December 2019 stay at St. Charles Parish Hospital (1F);[55] (2) Dr. Kronberger's July 22, 2020 Consultative Evaluation (2F);[56] and (3) Plaintiff's JeffCare medical records from January 8, 2020 through October 7, 2020 (5F).[57]  Additionally, the record includes

---

[50] *Id.*
[51] *Newton*, 209 F.3d at 452.
[52] *Winston*, 755 F. App'x at 398 (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[53] *Webster*, 19 F. 4th at 718.
[54] *Dubose v. Mathews*, 545 F.2d 975, 977 (5th Cir. 1977) (citations omitted).
[55] ECF No. 11 at 359-91.
[56] *Id*. at 392-97.
[57] *Id*. at 410-70.  The two other medical records exhibits, 3F and 4F, merely contain responses indicating that the facilities have no responsive records.  *Id*. at 398-409.

the opinions of the state disability determination psychological examiners at the initial level, Laura

Eckert, Ph.D.,[58] and reconsideration level, Carissa Bokelberg, Pys.D.[59]

Before making the RFC determination, the ALJ properly performed the Paragraph B

analysis to rate the severity of Plaintiff's mental limitations, noting that one extreme or two marked

limitations in a broad area of functioning were necessary to meet the criteria of Listing 12.04.[60]

Plaintiff specifically takes issue with the fact that the ALJ did not adopt Dr. Kronberger's findings

of marked limitation in social interaction and moderate to severe limitation in concentration,

persistence, and pace.

###### i.    Concentration, Persistence and Pace: Paragraph B and RFC Considerations

In assessing Plaintiff's ability to maintain concentration, persistence, or pace, the ALJ

considered Plaintiff's function report and his hearing testimony, wherein he reported a short

attention span and trouble completing tasks.[61]   Despite that reported difficulty, however, the ALJ

noted that Plaintiff's St. Charles Parish Hospital inpatient records and JeffCare behavioral health

records reflected a generally intact attention span and linear thought process.[62]   Accordingly, the

ALJ determined he had a moderate limitation in concentrating, persisting, and maintaining pace.

The ALJ then incorporated this mental limitation into the Plaintiff's RFC, restricting his

capacity to the performance of only simple and some detailed work, but no complex tasks.[63]   ALJ

Wiedemann then provided further explanation of Plaintiff's limitation in concentrating, persisting,

and maintaining pace when explaining how she crafted his RFC.   The ALJ noted that Plaintiff was

---

[58] ECF No. 11 at 76-80, 89-93.
[59] *Id*. at 107-116, 125-132.
[60] *Id*. at 19.
[61] *Id*. at 20 (citing 5E at 6; Hearing Testimony).
[62] *Id*. (citing 1F at 7-8, 5F at 6-9).
[63] *Id*. at 22-23.

observed by Dr. Kronberger to be "moderately to severely inattentive on tasks," but "was adequately groomed, maintained eye contact, and had intelligible speech."[64]  Plaintiff was also able to complete various diagnostic exercises, including spelling and calculations.  Plaintiff's February 2020 treatment records also indicated normal attention and concentration.[65]  In addition to this evidence, the ALJ noted her consideration of the aforementioned medical opinions, finding state examiners Dr. Eckert and Dr. Bokelberg's conclusions, including that Plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace, both supportable and consistent with the objective medical evidence.[66]

In considering Dr. Kronberger's opinion, the ALJ properly explained her reasoning for finding his conclusion not persuasive.  She noted that Dr. Kronberger did not review any of Plaintiff's medical records prior to the evaluation, hence his conclusion was supported only by the results of his diagnostic evaluation, without the full picture of Plaintiff's mental health status from December 2019 forward.  The ALJ also explained that Dr. Kronberger's opinion that Plaintiff is moderately to severely limited in concentrating, persisting, and pace was not consistent with the record as a whole, including the various records reflecting good eye contact, clear speech, ability to follow commands, and intact attention.[67]

### ii.    Social Interactions: Paragraph B and RFC Considerations

In determining Plaintiff's ability to interact with others, the ALJ noted Plaintiff's subjective belief that he has trouble getting along with others and does not interact well with authority figures[68] in contrast with the treatment records, which reflect that, with appropriate treatment,

---

[64] Id. at 22.
[65] Id. at 22.
[66] Id. at 23.
[67] Id. (citing 1F at 7-8, 213-25; 5F at 6-9).
[68] Id. at 19 (citing 5E, at 6-7; Hearing Testimony).

Plaintiff was observed to have an appropriate mood and affect and cooperative demeanor.[69] Accordingly, the ALJ determined that Plaintiff has a moderate limitation in his ability to interact with others.  ALJ Wiedemann then further explored Plaintiff's social capabilities in determining his RFC, noting his cooperative behavior in medication management and evaluative appointments.[70]

The ALJ also considered each medical source opinion in evaluating Plaintiff's RFC.  She noted the opinions of state examiners Dr. Eckert and Dr. Bokelberg, both of whom concluded that Plaintiff has moderate limitation in interacting with others, finding those opinions persuasive because both were supported by and consistent with the objective medical evidence.[71] As noted above, the ALJ found Dr. Kronberger's opinion not persuasive because of his lack of access to the totality of evidence.  Accordingly, she found Dr. Kronberger's  conclusion that Plaintiff would have marked difficulty with social interaction neither supported by nor consistent with the record as a whole.[72]  Accordingly, with Plaintiff's moderate limitation in social interaction in mind, the ALJ ensured that his RFC included a nonexertional limitation—"The claimant can relate to others on a superficial work basis  in  jobs that do not require public interaction."[73]

### iii.    Analysis

ALJ Wiedemann appropriately considered all medical evidence and opinions, including Dr. Kronberger's, in determining Plaintiff's RFC.  Contrary to Plaintiff's argument, the ALJ did not mischaracterize the evidence.  Rather, Plaintiff mischaracterizes the ALJ's logic when he argues that the ALJ discounted Dr. Kronberger's opinion because "it lacked insight from earlier

---

[69] *Id*. at 20 (citing 1F at 7-8, 23-25; 5F at 6-9).
[70] *Id*. at 22.
[71] *Id*. at 23.
[72] *Id*.
[73] *Id*. at 20.

evidence demonstrating drug-induced psychosis."[74]   A fair examination of the ALJ's decision reflects that she rejected this opinion because "the consultative examiner did not have access to the totality of the evidence, including hospital records demonstrating drug-induced psychosis."[75] Thus, the ALJ's choice centered on Dr. Kronberger's failure to review the record, which failure the examiner readily admitted in his evaluation: "No medical records were made available for review . . . Review of records and corroboration of current findings is recommended."[76]   Thus, Plaintiff makes a vast logical leap in stating that the ALJ's decision to find Dr. Kronberger's opinion not persuasive "implied the ALJ believed any mental limitations Plaintiff experienced beyond those accounted for in the RFC were the result of temporary drug-induced psychosis rather than a longstanding mental impairment."[77]   Further, Plaintiff's argument of "longstanding" mental impairment is directly contrary to his testimony indicating that he never had mental health problems in the past.[78]

For the reasons articulated above, the Plaintiff's arguments that the ALJ's decision is not supported by substantial evidence and that she failed to "properly evaluate" Dr. Kronberger's opinion fail.  Even if the ALJ had found Dr. Kronberger's opinion persuasive, Plaintiff still would not have satisfied the Paragraph B criteria for Listing 12.04 because even Dr. Kronberger did not find that Plaintiff had two marked limitations or one extreme limitation.[79]   The Administration evaluates the effects of a claimant's mental disorder based on a five-point rating scale consisting of (1) none, (2) mild, (3) moderate, (4) marked, and (5) extreme limitation.[80]   The scale does not

---

[74] ECF No. 14-1 at 5.
[75] ECF No. 11 at 23.
[76] *Id*. at 393-96.
[77] ECF No. 14-1 at 5.
[78] ECF No. 11 at 41.
[79] Dr. Kronberger concluded that Plaintiff had "marked difficulty with social interaction" and "moderate to severe difficulty with concentration, persistence and pace."  ECF No. 11 at 396.
[80] 20 C.F.R. Part 404, subpt. P, app. 1 § 12.00f(2).

contemplate in-between ratings, nor does it include a "severe" rating.  Accordingly, Dr. Kronberger's assessment of Plaintiff's "moderate to severe" limitation in ability to concentrate, persist, or maintain pace would not serve as persuasive evidence that Plaintiff met the criteria of Listing 12.04.

Nor would Plaintiff's solely nonexertional limitations beget a finding of disability under SSR 85-15.  As Plaintiff's limitations are solely nonexertional, and not of listing severity, although the limitations prevent him from meeting the mental demands of past relevant work, the final consideration is whether the person can be expected to perform unskilled work.[81]  The Administration advises that, in order to perform unskilled work, the claimant must be able to sustain mental demands including "the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." [82] Only a "substantial loss of ability to meet any of these" would severely limit the potential occupational base, justifying a finding of disability.[83]  Dr. Kronberger's evaluation does not suggest such a substantial loss of ability; he notes that Simon was well oriented in all spheres, his communication skills were fair, and he was able to understand directions.[84]  Though Dr. Kronberger noted occasional confusion, moderate to severe inattention, and difficulty with social interaction, nothing in his evaluation suggests that Plaintiff has suffered a substantial loss of these abilities such that his potential occupational base would be severely limited.  Further, Dr. Kronberger's own admission that he did not review medical evidence and that review of records and corroboration of his findings is warranted evinces that his opinion does

---

[81] SSR 85-15 at *4.
[82] Id.
[83] Id.
[84] ECF No. 11 at 396.

not serve to stand in the way of the substantial evidence supporting the ALJ's decision.  Thus, Dr. Kronberger's conclusion does not support a finding of disability under SSR 85-15.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish that the ALJ's RFC determination lacked substantial evidence.  This Court's role is not to re-weight the evidence.  The ALJ properly considered each medical source opinion, including that of Dr. Kronberger, and chose to rely on the opinions with the most supportability and consistency with the record as a whole.  Accordingly,

IT IS ORDERED that the Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED and that the Commissioner's decision is AFFIRMED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this _17th_ day of March, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE